Henry VAN RIPER, Appellant,

v.

The NEW YORK CENTRAL RAIL-
ROAD COMPANY, Appellee.

No. 12405.

United States Court of Appeals
Sixth Circuit.

Dec. 14, 1955.

Emerson H. Schink, Detroit, Mich.,
for appellant.

William A. Alfs, Detroit, Mich., for
appellee. George H. Wyatt, M. L. Cul-
len, Detroit, Mich., on brief.

Before SIMONS, Chief Judge, and
MARTIN and McALLISTER, Circuit
Judges.

PER CURIAM.

Henry Van Riper, a railroad engineer
of more than 25 years experience as
such, brought this action against The
New York Central Railroad Company un-
der the Federal Employers' Liability
Act, 45 U.S.C.A. §§ 51–60, and the Fed-
eral Safety Appliance Acts, 45 U.S.C.A.
§§ 1–23. Upon conclusion of the intro-
duction of evidence on behalf of the
plaintiff, the United States District
Judge took the case from the jury and
entered judgment for the defendant.
Van Riper has appealed from that judg-
ment to this court.

The facts are that, on the night of his
injury, Van Riper had reported for duty
at 11:30 o'clock in the railroad yard at
Detroit, Michigan. After checking in at
the Yardmaster's office, he went with his
fireman to his regular Diesel locomotive,
which was standing on the tracks at an
unlighted point in the railroad yard. The
engine was from ten to twenty years
old. The engineer began his regular
routine of testing various controls, ap-
pliances and devices on the locomotive
in order to ascertain whether the engine
was in good condition for operation.
One of the devices was a "sander," used
to deposit sand on rails to prevent slip-
ping.

The night was dark and drizzly and the
ground wet and slippery. In the course
of his examination of the sander, Van
Riper used his flashlight. He ascer-
tained that no sand was obtained from
the right side of the engine, so he de-
cided to examine the sandbox to see
whether or not it was empty, or clogged.
The sandbox, made of iron, was seven
feet long, two feet high and two feet
wide, and rested crosswise on the front
of the locomotive under the headlight,
but was not illuminated by it. The sand-
box had a heavy iron lid three-eighths

of an inch thick, hinged at the back. It had a six-inch lift across its front edge, overlapping the front of the sandbox when the lid was closed. Inside the outer lid were two separate inner lids, each of which covered one of the two compartments into which the sandbox was divided. One compartment supplied sand for the right side and the other for the left side. To hold up the outer lid while either of the two inner lids was being lifted for examination of the contents, a rod about five-eighths of an inch in diameter was attached. This rod had a swiveled bottom and its top was designed to fit into a socket, bolted to the under surface of the lid. This socket had a hole, or depression, in it for the insertion of the top end of the rod.

On the statement given at the time of the accident, appellant, who had sight in only one eye, said that after he had secured the iron rod under the cover of the sandbox to hold it open, he checked the sandbox on the engineer's side and found it about half full. He then took hold of the cover on the fireman's side; and, just as he was preparing to lift it, the top cover of the entire sandbox suddenly fell down and struck his left thumb a glancing blow. He stated that, as far as he knew, there was nothing defective in either the sandbox cover or the rod that is supposed to hold it open. He stated further: "I do not know what caused the accident or why the sandbox cover or lid fell except that I might have bumped against this rod with the cover of the box on fireman's side of engine when I was removing this cover to check the sand but whether I bumped against the rod or not I do not know. * * * I can't state either if I had the rod properly secured in the notch in the cover of the sandbox or not when I opened the large cover of the sandbox and adjusted the rod to keep it open."

At the trial, the appellant engineer testified that it seemed to him that the rod was a little shorter than usual, although the rods are not of standard length. He said: "Of course, if the rod is short, that prevents you from having the lid as high as it would be if it was longer. It makes it that much harder to see under the edge of the lid where the socket is."

Appellant contends that there was sufficient evidence to carry the case to the jury upon the issue of whether or not the defendant railroad was negligent in respect of the design and construction of the device for holding open the sandbox lid, whether or not the yard was sufficiently lighted; and whether or not there were defects in the sanding device which proximately caused the accident. Appellant introduced no proof that any other type of rod than that on appellee's engine is manufactured and in use. Nor did he introduce any evidence that there was any defect in the rod. He admitted that rods supporting lids are not of standard height.

No reasonable deduction could be drawn that the length of the rod had anything to do with causing the accident. It must be borne in mind that appellant had long been familiar with the appurtenances of locomotive engines. A part of his duty had been to check the sander before undertaking to run the engine. He well knew that the outer lid of the sandbox was heavy and, undoubtedly, he was familiar with the manner of opening the lid and securing the rod in the socket. Upon the issue of insufficient lighting, it is obvious that the work which he was doing would necessarily have to be performed from time to time without the benefit of artificial lighting. He was using a flashlight at the time of the accident.

Finally, as has been shown, appellant stated that he did not know what caused the accident, except that he might have bumped against the rod during his work of checking. He introduced no evidence whatever to show that the sanding device had become clogged or that there was any defect in the sandbox.

Upon this record, the United States District Judge properly entered judgment for the defendant. Accordingly, the judgment is affirmed.